ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Tuesday, May 19, 2020 8:21:17 AM
CASE NUMBER: 2020 CV 01970 Docket ID: 34578121
MIKE FOLEY
CLERK OF COURTS MONTGOMERY COUNTY OHIO

# IN THE COMMON PLEAS COURT OF MONTGOMERY COUNTY, OHIO
## CIVIL DIVISION

**JENNA BURTON, D.O.**
**705 Belauto Ct., Apt. G**
**Dayton, Ohio 45430**                          :          **CASE NO.          2020 CV 01970**

                                                :

    **Plaintiff,**

                                                :

    **v.**

                                                :

**KETTERING ADVENTIST HEALTH CARE,**          **JUDGE:   BARBARA P. GORMAN**
**3535 Southern Blvd**                          :
**Kettering, Ohio 45432**

                                                :

**and**

                                                :

**LYNDETTA SCHWARTZ, M.D., F.A.C.P.**
**3535 Southern Blvd**                          :
**Kettering, Ohio 45432**

                                                :

**and**

                                                :

**JOSHUA HAMILTON, M.D.**                        **DEMAND FOR JURY TRIAL**
**3535 Southern Blvd**                          :   **ENDORSED HEREON**
**Kettering, Ohio 45432**

                                                :

    **Defendants**

_____

## FIRST AMENDED CIVIL COMPLAINT FOR BREACH OF CONTRACT, DISABILITY DISCRIMINATION AND VIOLATION OF FMLA RIGHTS

_____

Now comes the Plaintiff, Jenna Burton, D.O. ("Dr. Burton"), and for her Complaint for

breach of contract, disability discrimination and violation of FMLA rights (the "Complaint")

against the Defendants, Kettering Adventist Health Care, d/b/a Kettering Health Network and

d/b/a Kettering Medical Center (collectively "KMC"), Lyndetta Schwartz, M.D., and Joshua

Hamilton, M.D., collectively the Defendants, sets forth the following averments of facts and

assertions of law, to-wit:

**NATURE OF DR. BURTON'S CLAIMS**

1.     This civil action on behalf of Dr. Burton seeks declaratory and injunctive relief, and compensatory damages for the Defendants' violations of Dr. Burton's contractual due process rights set forth in Dr. Burton's residency employment contract with KMC.  Dr. Burton brings this action to enforce her contractual rights, including the right to maintain her medical residency at KMC, her rights to notice and opportunity to be heard, and to maintain her reputation and standing in the community.  Dr. Burton seeks financial compensation for KMC's breach of contract, including KMC's disregard of applicable disciplinary procedures, including KMC's failure to place Dr. Burton on probation before terminating her employment, and KMC's failure to provide her with notice of disciplinary action and her right to appeal her termination, and for KMC's refusal to accept Dr. Burton's appeal of her termination.

2.     This civil action further seeks to enforce the rights of Dr. Burton to be free from conspiracies to discriminate by the Defendants, to be free from discrimination because of disability and perceived disability, and because she took a medically necessitated leave of absence.  This civil action specifically seeks to enforce Dr. Burton's rights to be free from unlawful disability discrimination and for taking leave as provided by the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act"); R.C. 4112.02 (the "Ohio Civil Rights Act"); and the Family and Medical Leave Act, 29 U.S.C. § 6201 *et seq*. ("FMLA"), and to obtain compensation from Defendants for the Defendants' violations of her rights.

3.     This civil action additionally seeks declaratory and injunctive relief with respect to KMC's breach of Dr. Burton's contract, and the specific performance of her contract.  Dr. Burton seeks this Court to require that KMC rehire and reinstate her, without prejudice, to her former

position as a medical resident in KMC's Internal Medicine Residency Program at her previous salary, plus raises, to provide Dr. Burton with reasonable accommodations, and to reinstate her employee benefits, including professional liability insurance, disability insurance, and health, dental, vision and life insurance.  Dr. Burton further seeks this Court require the Defendants to cease and desist from further discriminatory actions against her,

4.      This civil action challenges KMC's decision to terminate Dr. Burton's residency and employment, and KMC's refusal to accept her appeal of the decision to terminate her residency and employment.  Dr. Burton also seeks compensatory and punitive damages for the Defendants' violation of federal and state statutes prohibiting disability discrimination, and state common law prohibiting Defendants' intentional and malicious interference with her prospective contractual relationships and economic advantage in consequence of KMC's termination of her residency and the disruption of her medical career.

## JURISDICTION AND VENUE

5.      Jurisdiction of this Court is predicated on R.C. § 2305.01, providing for subject matter jurisdiction, and R.C. § 4112.99, with respect to claims brought pursuant to R.C. Chapter 4112, prohibiting disability discrimination.  Venue is proper pursuant to Civil Rule 3(B), as KMC maintains its principal place of business in Montgomery County, Ohio, and because part or all of Dr. Burton's claims arose in Montgomery County, Ohio.

## PARTIES

9.      Dr. Burton is a Doctor of Osteopathic Medicine, licensed to practice medicine in the State of Ohio (training certificate), who at all times relevant to the allegations contained in this

Complaint was a resident of Greene County, Ohio, and who brings this suit on her own behalf. Dr. Burton was formerly employed by KMC as a resident in KMC's Internal Medicine Residency Program.  Dr. Burton has certain medical conditions that substantially limit one or more major life activities, Defendants know that she has these medical conditions, and she is perceived by the Defendants as having such conditions.

10.     Defendant KMC is an Ohio non-profit corporation, operating hospitals, health care facilities, and educational institutions, including medical residency programs, all receiving various levels of federal financial assistance.  KMC operates under various registered trade names, including Kettering Medical Center and Kettering Health Network.  KMC is the recipient of substantial federal funding, and was the employer of Dr. Burton.

11.     Defendant Dr. Schwartz is the Kettering Medical Center Program Director for KMC's internal medicine residency program, and is listed as a member of the staff at KMC's Department of Internal Medicine.  Dr. Schwartz supervised Dr. Burton's residency at KMC and unlawfully terminated her employment.

12.     Defendant Dr. Joshua Hamilton was employed by KMC as a physician, and was placed in a position to supervise physicians in the KMC internal medicine residency program, including Dr. Burton.  Dr. Hamilton supervised Dr. Burton's intensive care rotation during her residency at KMC and was instrumental in the unlawful termination of her employment.

**STATEMENT OF FACTS**

13.     Dr. Burton is a graduate of the University of Tennessee, where she majored in microbiology.  Dr. Burton attended the Lincoln Memorial University Debusk College of

Osteopathic Medicine, where she attained her degree as a Doctor of Osteopathic Medicine.  After graduating from the Debusk College of Osteopathic Medicine, Dr. Burton sought employment in an internal medicine residency program offering the opportunity to specialize in interventional cardiology.  KMC recruited Dr. Burton to attend KMC's residency program, knowing that she sought admission in KMC's residency program so she could pursue KMC's fellowship in interventional cardiology after completing KMC' residency program.

14.     In March 2018, Dr. Burton was accepted into the KMC medical residency program, pursuant to a Graduate Medical Education Agreement with KMC on April 10, 2018 (hereinafter, the "Agreement").  Exh. A.  The Agreement has a three year term, expiring on June 30, 2021.  Pursuant to the terms of the Agreement, Dr. Burton was to be paid an annual stipend of $53,309, and was to receive an additional annual Primary Care Bonus of $6,000, payable at the rate of $1,500 per quarter.  The Agreement provided that Dr. Burton was to receive 15 working days of paid vacation per year, professional liability insurance coverage, disability insurance, and health, dental and vision insurance.

15.     In addition to specifying financial compensation and benefits, the Agreement requires KMC to work in good faith to accommodate Dr. Burton's disabilities.  The Agreement is to remain in "full force and effect, subject to . . . compliance with all the terms and requirements as set forth herein and according to The Graduate Medical Education Manual" (the "GMEM").  The Agreement also provides that "[t]he Parties further agree that under no circumstances will either Party terminate this Agreement prior to its expiration date without prior written notice and without providing the other Party the opportunity to discuss freely any differences, dissatisfactions or grievances that may exist."

16.    Aside from the requirement to discuss differences, dissatisfactions or grievances prior to termination, the Agreement mandates that a resident be given written notice before termination. Moreover, the Agreement directs KMC to comply with the Due Process Policy for Residents and Fellows ( the "Due Process Policy") in the "Housestaff Policy Manual."  The Due Process Policy requires that residents be placed on probation prior to termination, that residents be notified of the right to appeal being placed on probation, that residents receive at least 60 days advance notice of termination, and that residents receive written notice of the right to appeal a termination decision.

17.    After Dr. Burton started her residency, she experienced recurring difficulties due to long standing medical conditions that were affecting her attendance.  In October 2018, Dr. Burton met with Dr. Adam Fershko, and they discussed issues affecting her residency and the challenges she was facing.  Dr. Fershko was supportive and asked Dr. Burton if he could do anything to help, but otherwise took no action.  Dr. Fershko never indicated that Dr. Burton's attendance might cause her to be subject to disciplinary action or that she needed to undertake any specific corrective action in connection with her attendance or for any other reason.

18.    In December 2018, Dr. Schwartz met with Dr. Burton and conducted her six month evaluation.  Dr. Burton's attendance was discussed, and at that time Dr. Burton told Dr. Schwartz about her medical conditions.   In response to Dr. Schwartz's inquires, Dr. Burton explained the difficulties she was experiencing because of her disabilities, and the effect that her disabilities were having on her attendance.  Dr. Schwartz responded to Dr. Burton's explanation by telling her that a resident had suggested that Dr. Burton might be experiencing a drug or alcohol problem.  Dr. Schwartz was clearly unsympathetic to Dr. Burton's concerns, but she never told

Dr. Burton that any disciplinary action was under consideration. Regardless, Dr. Burton was in good academic standing and substantially meeting all attendance requirements.

19.     When Dr. Schwartz spoke to Dr. Burton about her attendance during her December 2018 year-end evaluation, she did not tell Dr. Burton that she could be subject to disciplinary action as a result of her attendance, or that she had not met any performance requirement. In fact, Dr. Burton was meeting or exceeding her residency performance expectations. Notwithstanding and despite the lack of support from KMC and Dr. Schwartz, Dr. Burton had received good evaluations during the first year of her residency. Moreover, Dr. Burton scored second of all KMC's first year residents on the Internal Medicine In-Training Examination, and was ranked in the top 40% nationwide.

20.     After meeting with Dr. Schwartz, Dr. Burton had no further communications with KMC concerning her disabilities until May 2019, when KMC gave her the name of a counselor she could contact. Prior to Dr. Burton's annual June residency evaluation, she emailed Dr. Schwartz, and further explained how her medical conditions were affecting her state of mind, and proposing strategies to improve her mental health. In the email, Dr. Burton requested that she be permitted to keep Dr. Schwartz informed via email as to the status of her efforts an progress towards improving her mental health.

21.     Dr. Burton met with Dr. Schwartz on June 4, 2019 for her year-end evaluation. During the evaluation, Dr. Schwartz told Dr. Burton that Dr. Burton's thoughts "were all over the place." In response to Dr. Burton's concerns, Dr. Schwartz was unreceptive and dismissive of her efforts to control her medical conditions. Dr. Schwartz did not offer any help or support, or respond to

Dr. Burton's request to keep Dr. Schwartz informed of her progress. Instead, Dr. Schwartz told Dr. Burton that an attending physician had given her a private evaluation, expressing concerns that Dr. Burton was exhibiting depression and/or anxiety.

22. On August 12, 2019, Dr. Schwartz met with Dr. Burton and told her that she was being given an official warning about her tardiness and absences. Dr. Schwartz showed Dr. Burton a warning letter stating that she had been excessively absent and had failed to follow attendance procedures. In the August 12 letter, Dr. Schwartz warned Dr. Burton that failure to follow attendance procedures could potentially subject her to termination. The letter did not state that Dr. Burton was being placed on probation, or that she had any appeal rights. Although Dr. Schwartz required Dr. Burton to sign the warning letter, she refused to allow Dr. Burton to keep a copy of the letter.

23. During the meeting on August 12, 2019, Dr. Schwartz told Dr. Burton that if she was going to be late or absent, she needed to contact her supervising physician and the program coordinator. Dr. Schwartz also accused Dr. Burton of having poor performance during the rotation, though she provided no examples, and Dr. Burton had never been told by anyone else that her performance was in any way deficient. The meeting with Dr. Schwartz on August 12 was the first time that Dr. Burton was told that official disciplinary action was being taken against her. At no time during the meeting or afterwards did Dr. Schwartz ever tell Dr. Burton that she was on probation or that she had the right to appeal the disciplinary decision.

24. On the morning of August 13, 2019, Dr. Burton sought counseling for stress and anxiety caused by her meeting with Dr. Schwartz the day before. Dr. Burton contacted Dr. Hamilton, her

attending physician and supervisor for the rotation, to let him know the change in her schedule. Dr. Burton also notified the program coordinator when she would be reporting to work, as she had been instructed by Dr. Schwartz. After the counseling session, Dr. Burton started her intensive care assignments at about 11:15 a.m., and later met with Dr. Hamilton after he finished doing rounds. During a noon conference, Dr. Schwartz mentioned to Dr. Burton that she knew that Dr. Burton had attended a counseling session that morning. That afternoon, Dr. Burton reported to Dr. Hamilton at approximately 3:00 p.m., while he was performing a procedure.

25. On August 14, 2019, Dr. Burton was still so feeling ill and distressed that she contacted the KMC program coordinator and inquired about requesting a leave of absence. Upon confirming that she was eligible to take FMLA leave, Dr. Burton requested a FMLA leave application and initiated the FMLA leave application process. KMC human resources provided Dr. Burton with instructions and the FMLA leave of absence documents for her physician to complete, and her request for FMLA leave was subsequently approved. Dr. Burton remained on FMLA through September 4, 2019.

26. Shortly before the end of Dr. Burton's FMLA leave, she received an email instructing her to report directly to Dr. Schwartz when she returned to work. On September 5, 2019, Dr. Burton met with Dr. Schwartz, and was told that she was terminated for not reporting to work until 3:00 p.m. on August 13, 2019. Although Dr. Burton tried to explain that her start time had been delayed, the she had followed the attendance procedure, and that on August 13 she was at work at 11:15 a.m., Dr. Schwartz refused to permit any discussion. Instead, Dr. Schwartz gave her a letter dated September 5, 2019 (the "Termination Letter"), terminating Dr. Burton's employment and residency at Kettering Medical Center. Exh. B.

27.     According the Termination Letter, Dr. Burton's termination "is [*sic*] results from a failure to comply with the terms of the warning letter you [*sic*] given to you on August 12, 2019." The August 12 letter referenced in the Termination Letter is the disciplinary letter that Dr. Schwartz showed Dr. Burton at their meeting on August 12, and required her to sign without permitting her to retain a copy. The Termination Letter inaccurately lists purported "Significant Interventions for Improvements," and under the caption of "Events on August 13" is referenced a "Memo" by Dr. Hamilton, that KMC claims is the justification for Dr. Burton's termination. The Termination Letter did not state that Dr. Burton was ever previously on probation, and did not advise her of her right to appeal the termination decision. Dr. Burton did not receive prior written notice of the decision to terminate her, and Dr. Schwartz did not provide her with an opportunity to discuss the reasons for her termination.

28.     Despite KMC's lack of support, Dr. Burton was able to successfully manage her disabilities so as to maintain her academic standing and meet KMC attendance requirements. However, because of Dr. Burton's disabilities, her request for accommodations, and her need to take FMLA leave, she was viewed by KMC and Dr. Schwartz as damaged goods to be discarded. KMC, aided and abetted by Dr. Schwartz and Dr. Hamilton, fabricated attendance issues. To create this pretext, KMC terminated Dr. Burton without placing her on probation, and without notifying her of her due process rights, including her right to appeal her termination.

29.     After the termination of Dr. Burton's residency, she requested a copy of the Housestaff Policy Manual referenced in the Agreement, so that she could review the Due Process Policy. Approximately six weeks later, KMC informed Dr. Burton that KMC did not maintain a

Housestaff Policy Manual, but that the KMC Due Process Policy was contained in the GMEM. Dr. Burton was subsequently provided with a copy of the GMEM, and upon learning of her appeal rights as set forth in the Due Process Policy, she appealed of her termination.  KMC has never responded as to whether Dr. Burton's appeal was accepted or rejected, and to Dr. Burton's knowledge KMC has never acted on her appeal.

30.     After Dr. Burton's termination, she requested a letter of reference so that she could apply to other residency programs.  In response, Dr. Schwartz sent Dr. Burton a reference letter, falsely claiming that her residency was terminated because she had "significant episodes of absenteeism and tardiness."   Exh. C.  In fact, Dr. Burton had no "significant episodes" of tardiness, and the only significant episode of absenteeism was Dr. Burton's approved FMLA leave.   In the reference letter, Dr. Schwartz falsely asserted that the reasons for Dr. Burton's absenteeism and tardiness "seemed to vary widely," and that KMC had "implemented numerous intervention processes."  KMC and Dr. Schwartz made these statements knowing them to be untrue, with the malicious intent of preventing Dr. Burton from securing employment in another residency program and from obtaining a subsequent fellowship in interventional cardiology at KMC or elsewhere, for the purpose of destroying Dr. Burton's medical career.

31.     As a result of the termination of Dr. Burton's residency, Dr. Burton has suffered severe mental anguish and emotional distress, and has required medical care and treatment in consequence thereof.  The unlawful discrimination by KMC, aided and abetted by Dr. Schwartz and Dr. Hamilton, have prevented Dr. Burton from obtaining admission and employment in a residency program, have disrupted her medical career, and have caused her to incur substantial

financial damages. Furthermore, KMC, aided and abetted by Dr. Schwartz and Dr. Hamilton, and as documented by Dr. Schwartz's purported letter of reference, have humiliated, disgraced, and defamed Dr. Burton, disrupting her medical career, ruining her reputation, and causing her continuing and irreparable injury and loss.

### First Cause Of Action
(Breach of Contract)

32.     Dr. Burton hereby incorporates paragraph 1 through 31 as if fully rewritten herein and further states that:

33.     Pursuant to the Agreement between KMC and Dr. Burton, KMC was obligated to provide Dr. Burton with a suitable environment for a productive residency experience, and was required to give Dr. Burton prior written notice before terminating her residency. KMC was also further required to give Dr. Burton the opportunity to discuss freely any differences, dissatisfactions or grievances that may have existed prior to terminating her residency. In breach of the Agreement, KMC terminated Dr. Burton's residency without prior notice and without providing her any opportunity before terminating her to discuss any objections that she might have to the decision to terminate her residency.

34.     The Agreement further requires KMC to comply with KMC's Due Process Policy, using progressive discipline to address issues of deficient performance, and to place Dr. Burton on probation to give her the opportunity to correct any performance deficiency prior to termination. Furthermore, the Due Process Policy requires that Dr. Burton receive written notification that she had been placed on probation and her rights to appeal the probation. In breach of the Agreement and in violation of KMC's Due Process Policy, KMC presented Dr. Burton with the August 12

letter threatening her termination without first placing her on probation, without notifying her of her appeal rights, and without permitting her to keep a copy of the August 12 letter.

35.     In breach of the Agreement, KMC terminated Dr. Burton's residency without prior written notice and without providing her "the opportunity to discuss freely any differences, dissatisfactions or grievances that may exist . . . ."  In breach of the Agreement, KMC terminated Dr. Burton's residency in violation of KMC's Due Process Policy, requiring KMC to provide her with written notification of her rights to appeal the termination of her residency.  Using the pretext of false allegations that Dr. Burton had failed to meet attendance requirements to justify the termination of her residency, KMC disregarded her contractual rights to due process, denying her the right to be heard prior to terminating her residency.  In breach of the Agreement, KMC terminated Dr. Burton's residency in violation of the Due Process Policy, without notifying her of her right to appeal the termination of her residency.

36.     As a direct and proximate result of KMC's breach of contract, Dr. Burton has suffered injuries and damages, including loss of employment, employment income, benefits, and prospective employment, and the costs of pursuing this action.  Dr. Burton's damages and costs incurred as a result of KMC's breach of the Agreement were foreseeable at the time the parties entered into the Agreement.  The full amount of Dr. Burton's damages as a result of KMC's breach of the Agreement have as yet not been fully ascertained, and include injuries that are not fully compensable by monetary damages alone.  These injuries include disruption of Dr. Burton's medical career and the loss of employment opportunities.  Accordingly, in addition to monetary damages, Dr. Burton is entitled to injunctive relief, including her reinstatement into the KMC internal medicine residency program.

37.     As a direct and proximate result of KMC's unlawful conduct in violation of the Rehabilitation Act, Dr. Burton has suffered injuries and damages, including mental anguish and emotional distress, humiliation and embarrassment, disruption of her medical career and the loss of prospective employment, loss of employment, employment income and employment benefits, and other costs including attorney fees and the costs of pursuing her claims herein.  The full amount of such damages has not yet been fully ascertained and shall be more fully detailed at the trial of this action.

### Second Cause of Action
(Discrimination in Violation of the Ohio Civil Rights Act)

38.     Dr. Burton hereby incorporates paragraph 1 through 37 as if fully rewritten herein and further states that:

39.     At all times relevant hereto, Dr. Burton has disabilities that substantially impair her major life activities, and has been perceived and regarded by the Defendants as having such disabilities. KMC, Dr. Schwartz, and Dr. Hamilton are employers as defined by R.C. § 4112.01(2), and are prohibited by the Ohio Civil Rights Act from discrimination on the basis of disability, or aiding and abetting in unlawful disability discrimination.  Notwithstanding Dr. Burton's disabilities, she is otherwise qualified and capable of successfully performing the duties of her position, and throughout her employment at KMC has successfully performed all the responsibilities and duties of her internal medicine residency.

40.      Following Dr. Burton's termination, she attempted to appeal of the termination decision, asserting her contractual appeal rights, the denial of due process, and that the decision to terminate her residency was motivated by unlawful disability discrimination.  In retaliation

against Dr. Burton for asserting disability discrimination, Defendant KMC intentionally and maliciously refused to consider her appeal and have refused to respond to her appeal. Worse yet, KMC and Dr. Schwartz subsequently issued a letter of reference, knowingly, intentionally and maliciously designed to prevent Dr. Burton from obtaining an internal medicine residency in another residency program and the subsequent interventional cardiology fellowship at KMC or elsewhere for the purpose of destroying Dr. Burton's medical career.

41. Defendant KMC, aided and abetted by Dr. Schwartz and Dr. Hamilton, and in violation of the Ohio Civil Rights Act, § 4112.02 (A) and (J), have intentionally and maliciously discriminated against Dr. Burton because of her disabilities or perceived disabilities, by: (1) subjecting her to unwarranted disciplinary action and by terminating her residency and employment without just cause in violation of the Agreement and KMC's Due Process Policy; (2) by using Dr. Burton's attendance as a pretext to discriminate against her so as to justify the termination of her employment; and (3) by denying Dr. Burton her contractual due process rights so as to prevent Dr. Burton from successfully appealing the termination of her residency.

42. As the direct and proximate result of KMC's discrimination and retaliation, Dr. Burton has suffered injuries and damages, including mental anguish and emotional distress, humiliation and embarrassment, disruption of her medical career and the loss of prospective employment, loss of employment, employment income and employment benefits, and other costs including attorney fees and the costs of pursuing the claims herein. Pursuant to R.C. § 4112.99, as the conduct of Defendants was intentional and malicious, Dr. Burton is entitled to recover attorney fees and punitive damages. The full amount of such damages has not yet been fully ascertained, but is in excess of $1,000,000.00 and shall be more fully detailed at the trial of this action.

### Third Cause of Action
(Discrimination in Violation of the Rehabilitation Act)

43.     Dr. Burton hereby incorporates paragraph 1 through 42 as if fully rewritten herein and further states that:

44.     At all times relevant hereto, Dr. Burton has disabilities that substantially impair her major life activities and has been regarded by the Defendants as having such disabilities.  The KMC internal medicine residency program is a substantial recipient of federal funding, and is prohibited by the Rehabilitation Act from discrimination on the basis of stereotypes about disabilities.  Notwithstanding Dr. Burton's disabilities, she is otherwise qualified and throughout her employment at KMC has successfully performed all the responsibilities of her internal medicine residency, including attendance requirements.

45.     Defendant KMC has intentionally discriminated against Dr. Burton because of her disabilities based upon stereotypes about disabilities in at least the following particulars: by (1) subjecting Dr. Burton to unwarranted disciplinary action and by terminating Dr. Burton without just cause in violation of KMC's Agreement and the Due Process Policy; (2) holding Dr. Burton to a higher standard of attendance and denying Dr. Burton the contractual rights that are provided to KMC residents who are not disabled; (3) using Dr. Burton's attendance as a pretext to discriminate against her and to justify the termination of her residency; (4) denying Dr. Burton's contractual due process rights so as to prevent Dr. Burton from successfully challenging the termination of her residency; (5) denying Dr, Burton the right to be heard prior to terminating her residency and (6) retaliating against Dr. Burton for asserting that she was terminated because of her disabilities.

46.     As a direct and proximate result of KMC's unlawful conduct in violation of the Rehabilitation Act, Dr. Burton has suffered injuries and damages, including mental anguish and emotional distress, humiliation and embarrassment, disruption of her medical career and the loss of prospective employment, loss of employment, employment income and employment benefits, and other costs including attorney fees and the costs of pursuing the claims herein. The full amount of such damages has not yet been fully ascertained and shall be more fully detailed at the trial of this action.

**Fourth Cause of Action**
(Violation of the Family and Medical Leave Act)

47.     Dr. Burton hereby incorporates paragraph 1 through 46 as if fully rewritten herein and further states that:

48.     KMC and Dr. Schwartz are employers subject to the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et. seq.*, and at all times relevant hereto, Dr. Burton was an FMLA eligible employee. Dr. Burton has certain medical conditions that substantially limit one or more major life activities, and qualify as serious health conditions. Dr. Burton informed Dr. Schwartz that her attendance issues were in consequence of her serious health conditions, thereby placing KMC and Dr. Schwartz on notice that her tardiness and absences were protected by the FMLA. Nonetheless, and in violation of the FMLA, KMC and Dr. Schwartz took disciplinary action against Dr. Burton on August 12, 2020, threatening Dr. Burton with termination for her FMLA protected absences, thereby interfering with the exercise of her FMLA rights.

49.     In violation of the FMLA, KMC and Dr. Schwartz interfered with Dr. Burton's FMLA rights and retaliated against her by preparing a letter of reference, falsely alleging that Dr. Burton

had significant episodes of tardiness and absenteeism, knowing that Dr. Burton's tardiness and absences were covered by the FMLA. As Dr. Burton's absenteeism and tardiness were the result of her serious health conditions, and the only significant period of time that Dr. Burton was absent during her residency was during her FMLA leave of absence, KMC's and Dr. Schwartz's references to Dr. Burton's tardiness and absenteeism are directed to Dr. Burton' protected FMLA absences and are retaliatory.

50.     Furthermore, KMC's and Dr. Schwartz's false and malicious allegations that Dr. Burton had "challenges with attendance, manifesting as tardiness and absenteeism . . . and the reasons seemed to vary widely" by necessity reference Dr. Burton's FMLA protected "tardiness and absenteeism." These statements constitute intentional interference with Dr. Burton's FMLA rights and were undertaken in retaliation for her exercise of her FMLA rights. At all relevant times hereto, KMC and Dr. Schwartz knew that Dr. Burton's absences and tardiness were due to her serious health conditions, intentionally interfered with Dr. Burton's exercise of her FMLA rights by issuing disciplinary action against her, and then retaliated against her for taking FMLA leave by falsely and maliciously asserting to prospective employers that her termination was the result of absences and tardiness that are protected by the FMLA.

51.     As a direct and proximate result of the actions by KMC and Dr. Schwartz to interfere with Dr. Burton's exercise of her FMLA rights and retaliate against her for the exercise of her FMLA rights, Dr. Burton has suffered injuries and damages, including disruption of her medical career and the loss of prospective employment, loss of employment, employment income and employment benefits, and other costs including attorney fees and the costs of pursuing the claims

herein. The full amount of such damages has as yet not been fully ascertained and shall be more fully detailed at the trial of this action.

**Fifth Cause of Action**
(Tortious Interference With A Prospective Contractual Relationship)

52. Dr. Burton hereby incorporates paragraph 1 through 51 as if fully rewritten herein and further states that:

53. When Dr. Burton interviewed with KMC for her internal medicine residency, she told Dr. Schwartz that she was applying to KMC because KMC offered an interventional cardiology fellowship. KMC and Dr. Schwartz hired Dr. Burton knowing that after she completed her residency she intended to apply for an interventional cardiology fellowship, whether at KMC or at some other accredited medical institution. During Dr. Burton's residency, Dr. Hamilton became aware of her aspirations to specialize in interventional cardiology, and that she would be pursuing an interventional cardiology fellowship upon the completion of her residencey.

54. Motivated by unlawful discriminatory animosity, the Defendants intentionally and maliciously terminated Dr. Burton's residency, and/or aided and abetted in the termination of her residency, justifying her termination on the false pretext of deficient attendance. Defendants KMC and Dr. Schwartz terminated Dr. Burton and then wrote a derogatory letter of reference, knowing that the termination of her residency and the pretextual references in the letter concerning her attendance would interfere with and prevent her from obtaining another residency, and subsequently an interventional cardiology fellowship, whether at KMC or at some other accredited medical institution.

55.     As a direct and proximate result of the Defendants' unlawful, intentional and malicious termination of Dr. Burton's residency and employment, Defendants have interfered with and have prevented Dr. Burton from obtaining alternate employment.  In consequence, Dr. Burton has lost prospective employment in KMC's interventional cardiology fellowship, and prospective employment with other institutions offering internal medicine residencies and fellowships in interventional cardiology.

56.     As a direct and proximate result of the the Defendants' unlawful, intentional, and malicious conduct, Dr. Burton has suffered injuries and damages, including mental anguish and emotional distress, humiliation and embarrassment, disruption of her medical career and the loss of prospective employment, loss of employment, employment income and employment benefits, and other costs including attorney fees and the costs of pursuing the claims herein.  As the Defendants' actions were intentional and malicious, Dr. Burton is entitled to an award of punitive damages and attorney fees.  The full amount of Dr. Burton's damages has not yet been fully ascertained but is in excess of $1,000,000, and shall be more fully detailed at the trial of this action.

        WHEREFORE, Dr. Burton respectfully requests this Court grant judgment providing for declaratory and injunctive relief and award damages as follows:

(1)     That the Defendant KMC has breached its Agreement with Dr. Burton, that she is entitled to an award of compensatory damages, and that damages Dr. Burton has incurred were foreseeable, including lost income from future employment incurred because of the delay and injury to her medical career;

(2)     That Dr. Burton is disabled and is able to perform the essential functions of an internal medicine residency with or without reasonable accommodations, that Defendants have unlawfully discriminated against Dr. Burton in violation of the

Rehabilitation Act and the Ohio Civil Rights Act because of her disabilities, and that Dr. Burton's damages include lost income from future employment incurred because of the delay and injury to her medical career;

(3) That the Defendants have intentionally interfered with Dr. Burton's prospective contractual relationships, including her candidacy for KMC's interventional cardiology fellowship, and prospective employment with other institutions offering internal medicine residencies and fellowships in interventional cardiology;

(4) That Dr. Burton's injuries include injuries and loss that are not fully compensable by monetary damages alone, and that in addition to monetary damages, Dr. Burton is entitled to injunctive relief, including reinstatement into the KMC internal medicine residency program;

(5) That as a result of Defendants' unlawful discrimination and unlawful interference with Dr. Burton's prospective contractual relationships, Dr. Burton has suffered severe emotional distress and mental anguish, and is entitled to the recovery of compensatory damages arising therefrom; and

(6) That the Defendants' conduct to unlawfully discriminate and unlawfully interfere with Dr. Burton's prospective contractual relationships was knowing, intentional and malicious. Dr. Burton is entitled an award of compensatory and punitive damages in an amount not yet ascertained but to be determined, including costs, reasonable attorney fees, and pre-judgment and post-judgment interest.

In conjunction with and in addition to the foregoing relief, Dr. Burton respectfully demands judgment against the Defendants upon such further evidence as is provided, including declaratory and injunctive relief, and an award of damages in an amount not yet fully ascertained, but as yet to be determined and in excess of $1,000,000.00, together with compensatory and punitive damages, pre-judgment interest, interest, costs herein expended, reasonable attorney fees, and such other relief as the Court finds just.

Respectfully submitted,

FOLKERTH + ROUTH PLL


/s/ John R. Folkerth, Jr.
John R. Folkerth, Jr. (0016366)
Trial Attorney for Jenna Burton, D.O.
109 North Main Street
500 Performance Place
Dayton, Ohio 45402
(937) 260-4202


Now comes the Plaintiff, Jenna. Burton, D.O., pursuant to Civil Rule 38, and hereby demands a trial by jury herein.


/s/ John R. Folkerth, Jr.
John R. Folkerth, Jr.


CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been electronically filed with the Clerk of Courts using the CM/ECF system, which will serve notification of such filing on for all parties on this 18th day of May, 2020.


s/ John R. Folkerth, Jr.
John R. Folkerth, Jr.