UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JENNA BURTON, D.O., | : | |
| | : | |
| Plaintiff, | : | Case No. 3:20-cv-209 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| KETTERING ADVENTIST HEALTH CARE, *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | |

**ENTRY AND ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (DOC. 9)**

Pending before the Court is "Plaintiff's Motion for Temporary Restraining Order" (Doc. 9) (the "T.R.O. Motion") filed by Plaintiff Jenna Burton, D.O. ("Burton") on June 10, 2020. Burton asks the Court to order that she "be reinstated to the KMC [Kettering Medical Center] Internal Medicine Residency Program, on or before July 1, 2020." (Doc. 9 at PAGEID # 435.) Defendants Kettering Adventist Healthcare, Lyndetta Schwartz, M.D., F.A.C.P., and Joshua Hamilton, M.D. (collectively, "Defendants") received notice of the T.R.O. Motion. Defendants filed a memorandum in opposition to the T.R.O. Motion on June 14, 2020. (Doc. 11.) On June 15, 2020, the Court conducted a phone conference with counsel for all parties and heard additional argument regarding the T.R.O. Motion.

In her First Amended Complaint, Burton alleges that she was employed by KMC as a medical resident in KMC's Internal Medicine Residency Program, she was terminated on September 5, 2019, and she was told that day by Dr. Schwartz that she was terminated for not reporting to work until 3:00 p.m. on August 13, 2019. (Doc. 4.) Burton brings claims for: (1)

1

breach of contract; (2) discrimination in violation of the Ohio Civil Rights Act; (3) discrimination in violation of the Rehabilitation Act; (4) violation of the Family and Medical Leave Act; and (5) tortious interference with a prospective contractual relationship. (*Id.*) Defendants removed the action to this Court, which has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) with respect to the claims arising under the Constitution, laws, or treaties of the United States and pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) with respect to the other claims. Burton earlier filed a motion for preliminary injunction (Doc. 6) (the "P.I. Motion"), in which she essentially asks for the same injunctive relief as the T.R.O. Motion. The P.I. Motion remains pending. Defendants filed a written response in opposition to the P.I. Motion, and Burton filed a written reply in support of the P.I. Motion. (Docs. 7 and 8.)

A temporary restraining order ("TRO") is an extraordinary remedy. Fed. R. Civ. P. 65; *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 860 (S.D. Ohio 2008). The Court considers and balances four factors in determining whether to grant or deny a motion for a TRO: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 627 (6th Cir. 2013); *see also Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008); *Libertarian Party of Ohio v. Husted*, No. 2:13-cv-953, 2014 U.S. Dist. LEXIS 200934, at *3, 2014 WL 12647018 (S.D. Ohio Sept. 24, 2014). "The factors are not prerequisites to injunctive relief; rather, the Court must balance them to determine whether they weigh in favor of granting a TRO or injunction." *Libertarian Party of Ohio*, 2014 U.S. Dist. LEXIS, at *3 (citing *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)). "The moving party bears the burden of justifying issuance of

an injunction, including showing likelihood of success and irreparable harm." *Id.*

Regarding the first factor, the Court finds that Burton has not shown that she has a "strong likelihood of success on the merits of her claims" at this stage of the litigation.[1] Based on what has been presented, the Court simply cannot say—at this point—that Burton has a "strong" likelihood of success on any of her claims.

Regarding the second factor, the Court recognizes that some courts have found irreparable injury in certain circumstances where there is interruption of an educational program or delay in the ability to pursue a chosen profession, especially where it is coupled with other types of harm. *Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677, 687 (S.D. Ohio 2012) ("There is some authority for the proposition that an interruption in an educational program is not, of itself, an irreparable injury. There is contrary case law, however, especially when the denial of an educational opportunity is coupled with other types of harm. … Other courts have similarly found even a delay in the ability to pursue a chosen profession to be the type of irreparable harm which will support temporary injunctive relief.") (internal citations omitted). However, the Court finds that the irreparable nature of the injury Burton would suffer without the requested injunction is, to a large extent, self-inflicted by Burton's delay in seeking a TRO. *See Libertarian Party of Ohio*, 2014 U.S. Dist. LEXIS, at *8 (denying motion for TRO and finding that, despite the fact that the plaintiff would suffer harm without a TRO, the harm to the plaintiff was largely self-inflicted because of plaintiff's failure to seek a TRO with diligence); *Allied Erecting & Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x 398, 405 (6th Cir. 2013) ("an unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm"); *Ne. Ohio Coal. for*

---

[1] This finding, as well as the Court's other determinations in this Order, applies only to Burton's T.R.O. Motion, and the Court will consider each of the factors in connection with Burton's P.I. Motion following a hearing on that motion. *See Libertarian Party of Ohio*, 2014 U.S. Dist. LEXIS, at *7-8; Fed. R. Civ. P. 65.

*the Homeless v. Husted*, No. 12-4354, 2012 U.S. App. LEXIS 26926, at *16 (6th Cir. Nov. 16, 2012) (plaintiff's claim of irreparable injury was belied by waiting to raise its concerns).

Burton states in her supporting affidavit that, to her knowledge, "all the medical residency programs start on July 1." (Doc. 9-1 at PAGEID # 443.)  Yet, Burton was terminated from KMC's residency program on September 5, 2019—over eight months prior to filing her original complaint and her original motion for preliminary injunction, and over nine months prior to filing her T.R.O. Motion.  Burton indicates that she retained counsel after her termination and that both she and her attorney sent appeal letters to KMC back in mid-November 2019 (i.e., over six months ago).  She states that the letters were part of her "efforts to explore whether KMC would be willing to reconsider [her] termination."  (*Id.* at PAGEID # 442.)

Although KMC did not respond to her appeal letters (and there is no indication KMC ever considered reinstating her), Burton "did not want to file a lawsuit against KMC." (Doc. 9-1 at PAGEID # 442.)  Burton certainly had the right to choose not to sue her former employer.  Instead, after receiving no response, she then "decided that [she] had to get [her] life back on track, and [she] started looking into applying to another residency program." (*Id.*)  According to Burton, she reached out to several residency programs and submitted applications, but "[f]rom the responses to [her] applications," she learned that she would need a letter of reference from KMC before she would be accepted into any accredited residency program.  (*Id.*)  She "then contacted KMC and requested a letter of reference," and, "[s]hortly thereafter," Dr. Schwartz sent her a reference letter dated April 3, 2020.  (*Id.*)  Burton says that she "do[es] not know of any residency program that would accept [her] after seeing Dr. Schwartz's reference letter," and that "[a]t this point it is too late for [her] to apply to another residency program that will start before 2021." (*Id.* at PAGEID # 443.)

Although Burton provides reasoning for why she did not file a lawsuit or move for a TRO earlier, it remains that she chose not to file a lawsuit and move for injunctive relief several months ago. She even acknowledges her "delay in pursuing this litigation." (Doc. 8 at PAGEID # 430.) That delay played at least a significant part in the now urgent nature of the relief requested in the TRO. Also, there is no evidence that Defendants (or anyone) prevented Burton from learning that residency programs start on July 1 or that she allegedly would need a letter of reference from KMC (and she admits that Dr. Schwartz promptly provided such a letter upon request). While it was certainly reasonable for Burton to have waited a period of time for a response to her appeal letters before filing a lawsuit, her subsequent decisions and passage of several months cause her delay in filing to become unreasonable for purposes of the irreparable injury analysis in the context of the TRO requested (i.e., ordering her reinstatement to KMC's medical residency program on or before July 1, 2020). Additionally, Burton failed to explain why she must be reinstated on the first day of KMC's residency program, particularly in light of her allegation that she was terminated from KMC's program in the middle of its second year.

Burton's delay in seeking a TRO or preliminary injunction does not preclude "any possibility of relief or absolutely preclude[] a showing of irreparable harm." *Fenje v. Feld*, No. 01 C 9684, 2002 WL 1160158, at *2, 2002 U.S. Dist. LEXIS 9492 (N.D. Ill. May 28, 2002) (involving lawsuit following termination from residency program). "The delay, however, is still a factor to be considered." *Id.* And, in addition to being considered in balancing the hardships, "delay in pursuing relief undercuts claims of irreparable harm and may be considered as circumstantial evidence that the potential harm to plaintiff is not irreparable or as great as claimed." *Id.*; *see also Kendall Holdings*, 630 F. Supp. 2d at 867 ("[t]he length of time that a party takes to file suit or request injunctive relief is also relevant to the irreparable harm inquiry. A delay between the

5

discovery of the allegedly infringing conduct and the request for injunctive relief can support an inference that the alleged harm is not sufficiently severe or irreparable to justify injunctive relief.") (internal citation omitted).

The issue is similar to that presented in *Patel v. St. Vincent Health Ctr.*, No. CV 12-0298, 2013 U.S. Dist. LEXIS 122181, 2013 WL 4591271 (W.D. Pa. Aug. 28, 2013). The plaintiff in that case likewise sought an order directing the defendant to reinstate her into the defendant hospital's residency program. *Id.*, at *2. The plaintiff argued that, "in the absence of injunctive relief, she will be irreparably harmed because she will not be able to gain admission to another residency program specializing in emergency medicine," and, "[c]onsequently, she will be ineligible to take the Board Certification Exam in Emergency Medicine or obtain a position as an emergency medicine physician." *Id.*, at *15. The court denied plaintiff's motion, finding that the irreparable injury factor "vitiates against an award of injunctive relief" due to the delay between her termination from the residency program and her initiation of the lawsuit. *Id.* at *15-16. The delay "undermine[d] her assertion that irreparable harm is imminent." *Id.*

Regarding the third and fourth factors, Burton's supporting caselaw recognizes that reinstatement to the residency program would "be potentially harmful to [its provider] in that it would place the [medical provider] at risk of malpractice liability." *Fenje*, 2002 WL 1160158, at *8. And, contrary to Burton's argument, there is "potential risk to the public" when the resident would be attending to patients—as is the case here. *Id.* Burton did not dispute that there were times prior to her termination when she did not show up for her shift (whether not on time or not at all), she did not provide prior notice of her tardiness or absence, and the result was that her colleagues and other medical staff needed to scramble to take care of her patients. Based on what has been presented, Defendants raise legitimate, substantial interests and concerns that weigh

6

against granting her requested relief. (Doc. 7 at PAGEID # 332 ("KMC has a substantial interest in protecting the health and safety of its patients. Plaintiff's [alleged] tardiness and attendance issues with reporting to work alone are detrimental to the public as they result in unplanned understaffing that impacts the safety of KMC's patients. The public interest is not served by forcing KMC to reinstate physicians into its internal medicine residency program who are unreliable."); *see also, e.g.,* Doc. 11-1 at PAGEID # 492-93 (August 12, 2019 warning letter expressing, among other concerns with Burton's alleged "persistent and recalcitrant absenteeism and tardiness without notice," that "it left [her] colleagues and patients vulnerable"); *id.* at PAGEID # 476; *id.* at PAGEID # 480; *id.* at PAGEID # 486.

The Court concludes that, having considered and balanced the four factors, they do not weigh in favor of granting the TRO requested and that Burton has failed to satisfy her burden of justifying its issuance.[2] The Court emphasizes that this is not determinative of a ruling on the P.I. Motion or at a trial on the merits. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981) ("the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits"). The Court **DENIES** Plaintiff's Motion for Temporary Restraining Order (Doc. 9).[3]

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, June 16, 2020.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[2] The Court also notes that Burton completely failed to address the security requirement set forth in Federal Rule of Civil Procedure 65(c).
[3] The Court will schedule a conference call with the parties to discuss scheduling a hearing on the P.I. Motion and Burton's general request for discovery prior to such hearing.